RICHARD A. HARRIS, ESQ.
Nevada Bar No. 505
MICHAELA E. WOOD, ESQ.
Nevada Bar No. 9466
**RICHARD HARRIS LAW FIRM**
801 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 444-4444
Fax:  (702) 444-4455
E-Mail: Michaela@richardharrislaw.com
*Attorneys for Plaintiff*
*Monica Hinostroza*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MONICA HINOSTROZA, | CASE NO.:  2:17-cv-02561-RFB-NJK |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT DENNY'S INC. d/b/a DENNY'S RESTAURANT'S MOTION TO COMPEL DISCOVERY** |
| v. | |
| DENNY'S, INC. d/b/a DENNY'S RESTAURANT, a Foreign corporation, DOES 1 through 20; ROE BUSINESS ENTITIES 1 through 20, inclusive, jointly and severally, | |
| Defendants. | |

COMES NOW PLAINTIFF MONICA HINOSTROZA, by and through her counsel of record, MICHAELA E. WOOD, ESQ. of the RICHARD HARRIS LAW FIRM, and presents her Opposition To Defendant Denny's Inc. d/b/a Denny's Restaurant's Motion To Compel Discovery.  Plaintiff's Opposition is based upon the following points and authorities, the pleadings and other papers on file herein, and any oral argument this Court may entertain.

//

//

1

## I. INTRODUCTION

Defendant appears to believe, incorrectly, that no discovery request, no matter how broad and baseless, can now be identified as a "fishing expedition," simply because the Supreme Court once limited the applicability of that phrase. However, Defendant's discovery requests are a textbook example of an overreaching "fishing expedition," and they must be curtailed or prohibited altogether.

In addition, Defendant asserts its (self-serving and baseless) view that "Plaintiff has credibility issues" and that "Plaintiff also appears to be trying to hide her medical history." These assertions based on Defendant's myopic view of the discovery process, have no legal standing and certainly cannot serve as a basis for Plaintiff to be ordered to indulge Defendant's self-evident fishing expedition.

Plaintiff certainly agrees that Defendant has the right to conduct reasonable discovery within the Rules, and will respond timely to such requests. But Defendant's requests at issue here have been served simply in the hopes of turning up something of use, with no basis whatsoever to believe that such is the case (much like casting a broad net into a body of water in hopes that there are fish there).

As the Supreme Court defined this supposedly obsolete term less than ten years ago, this "fishing expedition" seeks to allow Defendant to engage in "undirected rummaging through [records] for evidence of some unknown wrongdoing." Simply put, Defendant believes Plaintiff is lying, and believes that Defendant should be permitted unfettered access to clearly undiscoverable materials in order to prove that Plaintiff is lying.

Defendant's backwards approach to meeting its burden to show relevance has been rejected by every court that has considered it. Plaintiff therefore respectfully requests that this Court deny Defendant's Motion in its entirety.[1]

---

[1] Defendant's Motion states that "The proposed releases are attached as Exhibit 'N'." *Docket Filing #16*, 5: 28. However, as Defendant's Exhibits are assigned Arabic numerals (1-24) rather than letters, there obviously is no "Exhibit N."

Moreover, while Exhibit 14 includes releases for the police report, insurance file, and medical records, none of the exhibits appears to include any release for employment information or the other materials sought by Defendant.

2

## II. LEGAL ARGUMENT

### A. DEFENDANT'S OVERBROAD AND UNDULY BURDENSOME MEDICAL RECORDS REQUESTS ARE BASED SOLELY ON DEFENDANT'S MISTAKEN BELIEF THAT PLAINTIFF OPENED THE DOOR TO HER ENTIRE MEDICAL HISTORY SIMPLY BY ALLEGING PERSONAL INJURY.

Defendant apparently believes that, because Plaintiff was injured on Defendant's premises and seeks compensation for those injuries, Plaintiff has somehow forfeited the basic protections that apply to individuals regarding medical treatment. As Defendant bluntly (and incorrectly) puts it "Plaintiff has placed her medical condition at issue and thus has waived any privilege concerning her prior medical history." *Docket Filing #16*, 11: 25-26.

Of course, nothing could be further from the truth. Under Nevada law, a party that seeks damages for personal injury gives a *limited* waiver of privilege, which the Nevada Supreme Court has expressly defined:

> Bringing a claim for personal injury or medical malpractice results in a *limited waiver of the physician-patient privilege* with regard to *directly relevant* and *essential information necessary to resolve the case*.

*Mitchell v. Eighth Judicial Dist. Court of State ex rel. Cty. of Clark*, 131 Nev. Adv. Op. 21, 359 P.3d 1096, 1100 (Nev. 2015) (quoting *Leavitt v. Siems*, 130 Nev. Adv. Op. 54, 330 P.3d 1 (Nev. 2014)) (emphases added).

Thus, contrary to Defendant's apparent belief that Plaintiff's lawsuit opens up unfettered access to any portion of Plaintiff's medical history that Defendant cares to invade, such access is strictly limited under Nevada law. Indeed, the Nevada statute providing for such a limited waiver provides that the waiver extends only to "written medical or hospital records *relevant to an issue of the condition of the patient* in any proceeding in which the condition is an element of a claim or defense." *See* Nev. Rev. Stats. § 49.245 (emphasis added).

//
//
//
//

3

While all evidence of course must be relevant in order to be admissible, the waiver of privilege in a personal injury action extends only to information that is "*directly* relevant" and "*essential* [and] *necessary* to resolve the case." *Mitchell*, 359 P.3d at 1100 (emphases added). As the proponent of the privilege, Plaintiff bears the burden of establishing it, which has been done here. *Rogers v. State*, 127 Nev. 323, 330, 255 P.3d 1264, 1268 (2011). In order to assert a *waiver* of that established privilege, Defendant bears the burden to demonstrate that the information sought meets these criteria.

Thus, in order to overcome the pre-existing privilege and invade Plaintiff's privacy, Defendant bears the burden to show that the materials sought are *directly* relevant to this matter and are "essential" and "necessary" to resolve the case. *Mitchell*, 359 P.3d at 1100. Instead, Defendant simply asserts that certain information *might* be relevant and useful, depending upon what records actually exist and what they show.

This cart-before-the-horse speculation is the very *definition* of a "fishing expedition." Defendant claims, purportedly based on *Hickman v. Taylor*,[2] that "the United States Supreme Court invalided [sic] the fishing expedition defense back in 1947." *Docket Filing #16*, 17: 3-5. Defendant is wrong, of course—as this Court has specifically noted when other Defendants attempted to pursue fishing expeditions on the basis that the Supreme Court has abolished that defense to overreaching discovery, the Supreme Court did no such thing.

//
//
//
//
//
//
//
//

---

[2] 329 U.S. 495 (1947).

In response to yet another party's baseless assertion that nothing is off-limits because the defense of "fishing expedition" was abolished in *Hickman*, this Court stated:

> In *Hickman v. Taylor* [ ] the Supreme Court famously stated: "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." The cry of "fishing expedition," however, did not die-out as a result of *Hickman*.
>
> As recently as *Cuomo v. Clearing House Ass'n*, LLC [ ], the Supreme Court stated that "[j]udges are trusted to prevent 'fishing expeditions' or an <u>*undirected rummaging through bank books and records for evidence of some unknown wrongdoing*</u>." In *Rivera v. NIBCO, Inc.* [ ], the Ninth Circuit stated that "[d]istrict courts need not condone the use of discovery to engage in 'fishing expedition[s]'" and in *Hofer v. Mack Trucks, Inc*. [ ] the Eighth Circuit stated that the broad construction of relevancy "should not be misapplied so as to allow fishing expeditions in discovery."
>
> *Hofer* further stated that "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." [ ]

*Voggenthaler v. Maryland Square, LLC*, 2011 WL 112115, at *8 (D. Nev. Jan. 13, 2011), on reconsideration in part, No. 1:08-CV-L618-RCJ-GWF, 2011 WL 902338 (D. Nev. Feb. 28, 2011) (internal citations omitted).

Thus, contrary to Defendant's assertion, "fishing expedition" is still a valid objection to the discovery requests at issue here, with that term nicely defined by the Supreme Court as "undirected rummaging through [records] for evidence of some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531 (2009). A more apt description of Defendant's requests would be difficult to construct. Defendants simply believe (self-servingly) that certain things *might* be contained in the records sought, and solely on that basis ask that all limitations on Defendant's "right" to discovery be thrown aside. *Docket Filing #16*, 6: 8-9.

//
//
//

This description of Defendant's intentions is confirmed by Defendant's own incorrect misstatement that "Plaintiff has placed her medical condition at issue and thus has waived any privilege concerning her prior medical history." *Id.* at 11: 25-26.  Clearly, Defendant believes (or at least asserts) that *there simply are no limits* as to what invasion of Plaintiff's privacy Defendant may perpetrate.  As a matter of law, as shown above, that position is incorrect.[3]

In fact, as this Court has noted in finding that "fishing expeditions" are still prohibited, the Federal Rules were recently *changed* in order to more adequately protect a party from overreaching discovery requests, even when the information sought is deemed relevant:

> The conclusion that proposed discovery is *relevant*, however, *does not necessarily end the inquiry as to whether it should be allowed*.  The 2000 amendment to Rule 26(b) was intended to *encourage courts to exercise greater scrutiny* in deciding whether discovery should be limited or precluded under the factors set forth in subsection [FRCP 26](b)(2)(C).

*Voggenthaler*, 2011 WL at *8 (emphases added).

Thus, Defendant bears the burden to demonstrate both that the information sought is relevant, and that the discovery requested does not run afoul of the restrictions imposed by FRPC 26b)(2)(C), which include observance of the scope of discovery defined in FRCP 26(b)(1).

//
//
//
//

---

[3] Even when acknowledging that some limits on discovery may actually exists, Defendant gets the law wrong:

> It is important to note that 'Information within this scope of discovery need not be admissible in evidence to be discoverable.'"  FRCP 26(b)(l).  The information only needs to be calculated to lead to the discovery of admissible evidence.

*Docket Filing #16*, 9: 5-7.

Defendant's statement is incorrect.  The "[reasonably] calculated to lead to the discovery of admissible evidence" requirement was *removed* from FRCP 26 in 2015, and was *replaced* with the sentence Defendant quotes, specifically to prevent misuse of the prior phrase in setting boundaries on discovery.  *See* Fed. R. Civ. P. 26, advisory committee's notes (2015).

Defendant's only basis for asserting relevance of the requests addressed in its Motion is that "[a]s outlined above, Plaintiff is already found to be hiding her medical providers. This begs the questions, what other information and witnesses is she hiding." *Docket Filing #16*, 17: 6-8.  To that end, because Defendant has already decided that Plaintiff is a liar (based on Defendant's own perception of events in discovery, rather than actual facts), Defendant believes all limitations on discovery should be cast aside, all of Plaintiff's rights should be disregarded, and Defendant should simply be permitted unfettered access to Plaintiff's medical history. After all, "Plaintiff has credibility issues which should give [Defendant] the right to confirm" anything Plaintiff states for itself, even if that involves invading Plaintiff's right to privacy or her doctor-patient privilege. *Id.* at 6: 5-7.

Defendant, of course, has apparently decided that Plaintiff has "credibility issues" solely on its own, without any finding or Order from this Court to that effect.  As such, Defendant's assertion has no legal significance or status.  A party that simply accuses another party of lying cannot, on the basis of that unfounded assertion, strip the other party of its procedural protections.  And yet, that is precisely what Defendant attempts to do here, essentially arguing that "We know she's lying, Judge, and if you just open up *every document in her life* to us, we are pretty sure we can find something to prove it."

Defendant has not even acknowledged, let alone satisfied, its burden to "to make a threshold showing that the discovery is relevant[.]" *Voggenthaler*, 2011 WL at *8.  Plaintiff respectfully requests that, absent such a showing specific to each record or set of records sought, Defendant's Motion be denied with respect to Plaintiff's medical records.

//

//

//

//

//

//

### B. EVEN DEFENDANT ADMITS THAT ITS OVERBROAD AND UNDULY BURDENSOME REQUESTS CONSTITUTE A "FISHING EXPEDITION," AND MUST BE PROHIBITED.

As established above, Defendant's boundless request for every medical record ever created regarding Plaintiff constitutes the type of "undirected rummaging through [records] for evidence of some unknown wrongdoing[ ]" still condemned by the Supreme Court long after *Hickman v. Taylor* as a "fishing expedition." *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531 (2009). However, Defendant's demand for unfettered access to Plaintiff's medical history pales in comparison to Defendant's demand for other documents without a shred of demonstrated relevance.

For example, Defendant wants Plaintiff to be forced to sign a release for the insurance file related to an automobile accident Plaintiff sustained in 2015. *Docket Filing #16*, 12: 1-8. Plaintiff has already stated that she was not injured and did not seek treatment. *Id.*, Exhibit 15 thereto, 14: 12-18. But, obviously, Plaintiff is lying, Defendant asserts, and, solely on that basis, Defendant asserts that it

> wants to send a subpoena to the adverse Insurance carrier for the 2015 auto accident. The adverse insurance carrier's records are relevant since it contains the property damage from the prior accident and it'll [sic] *confirm whether or not Plaintiff indeed treated as a result of the 2015 accident*. There is no privilege protecting this information and thus it should be discoverable. It obviously leads to admissible evidence *if there are medical providers Plaintiff has not disclosed*.

*Id.* at 12: 1-8 (emphases added).

Thus, Defendant admits that its *only* basis for seeking this insurance file is Defendant's *assumption* that Plaintiff is lying. If we can only get our hands on this file, Defendant asserts, we can confirm that Plaintiff is lying, and even find out about the medical providers she is lying about. A clearer example of "undirected rummaging through [records] for evidence of some unknown wrongdoing[ ]" would be impossible to find. Defendants simply want to be allowed unfettered access to Plaintiff's medical records *just in case* they contradict Plaintiff's sworn statements about her history.

8

While Defendant may believe Plaintiff has "credibility issues," that baseless assertion does not constitute the required showing of *direct* relevance and that the information is "essential" and necessary" to resolve the case. *Mitchell*, 359 P.3d at 1100.

Even more appalling is Defendant's "argument" for discovery into Plaintiff's Fitbit data and her social media accounts.[4] Defendant argues, purportedly based on *E.E.O.C. v. Simply Storage Management, LLC*,[5] that its request for "any social media account your [sic] have from five (5) years prior to the Subject Accident through the present[ ]" should be approved.

Incredibly, Defendant even claims to recognize that the *E.E.O.C.* court put strict limits on what could be discovered from a social media account, and even quotes these limits *in their entirety* . . . before reverting to its original overbroad request

> merely [sic] asking for Plaintiff to make her account accessible to a third party vendor who could down load the posts she made during the relevant time frame. Typically, Courts find it is reasonable to allow access to five years['] worth of medical records prior to an accident. Defendant is merely asking to apply this standard to Plaintiffs['] social media and allow access to the posts she made to other people on a quasi public forum. Having a third party vendor perform the action clearly addresses Plaintiffs "unduly" burdensome objection.

*Docket Filing #16*, 21: 13-18.

//
//
//
//

---

[4] Oddly, after laying out in great detail the requirements of "control" applied to discovery requests, Defendant reverses course and states that Plaintiff's response that she has no responsive documents in her "possession, custody, or control" is insufficient. *Docket Filing #16*, 17: 18-20. Instead, "Plaintiff should be ordered to clearly state whether or not these documents exist or not [sic]." *Id.*

Of course, Plaintiff has responded to the extent production would be required of her—Plaintiff obviously has no way of knowing if responsive documents or data have been created or maintained by some third party, *i.e.*, "whether or not these documents exist[.]" She knows only what is in her possession, custody, or control, and she already responded regarding that.

[5] 270 F.R.D. 430 (S.D. Ind. 2010). In addition, regarding this case, Defendant states that "In *E.E.O.C.,* [sic] sought Plaintiffs' social media posting under different methods of Requests for Production." *Docket Filing #16*, 18: 24-25. Plaintiff has no idea (and Defendant does not explain) what is meant by "different methods of Requests For Production."

9

Thus, after specifically acknowledging that even its most Defendant-friendly precedent imposed strict limits—and allowed only three years' worth of pre-incident discovery—Defendant fails to accordingly limit its request to this Court. Instead, Defendant casts all such considerations aside, asking this Court to permit Defendant access to *every single social media post Plaintiff has made from February 22, 2011, until the time of trial*.

To add insult to injury, Defendant then asserts that having a third-party vendor pillage Plaintiff's Facebook page will address Plaintiff's "unduly burdensome" objection, as though it were the *logistical difficulty* of ripping more than seven years of her private life open to Defendant's fishing expedition—rather than the intolerable invasion of privacy—that gave rise to that objection.

Defendant's requests for the insurance file, Fitbit data, and social media are clearly overbroad and unduly burdensome. Defendant makes no case whatsoever for why such materials are relevant or discoverable—other than asserting that Defendant might find something useful therein, particularly if Plaintiff has lied about it. *See, e.g., Docket Filing #16*, 12: 1-8 (noting that if Plaintiff lied about being injured in the 2015 accident, the insurance file will reveal that, and also will reveal the names of doctors Plaintiff treated with, because if she lied about her injuries, she obviously lied about her doctors as well).

After all, as Defendant itself states,

> Plaintiff's social media provides a contemporary diary of Plaintiff's activities, thoughts, mental/emotional condition, and actions,[ ] which related to Plaintiffs claim for damages arising from emotional distress. It also provides a contemporary diary concerning her physical limitations. Again, Plaintiff is alleging $500,000 for future lumbar surgery. And yet, *if she's posting pictures or posts documenting* hiking adventures or marathons, or gym work outs, this all goes to the credibility of her claim.

*Docket Filing #16*, 21: 7-12 (extraneous quotation mark omitted) (emphasis added).

Thus, Defendant *admits* that it seeks unfettered access to rummage through Plaintiff's life for evidence of *unknown wrongdoing*—which, coincidentally, is the United States Supreme Court's actual (and still applicable) *definition* of a "fishing expedition"! *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531 (2009).

### III. CONCLUSION

Defendant's Motion comes nowhere near the standard for compelling discovery—Defendant simply believes that Plaintiff is lying, and therefore seeks unfettered access to Plaintiff's medical records and personal life just in case Defendant can find something to prove Plaintiff is lying.

The United States Supreme Court, the Ninth Circuit, and this Court have unequivocally recognized that such "fishing expeditions" still go on post-*Hickman*, and all three courts have roundly condemned them and declined to eviscerate the limitations on discovery as Defendant requests. Plaintiff therefore respectfully requests that this Court deny Defendant's Motion in its entirety.

DATED this 18th day of May, 2018.

**RICHARD HARRIS LAW FIRM**

*/s/ Michaela E. Wood*

---

RICHARD A. HARRIS, ESQ.
Nevada Bar No. 505
MICHAELA E. WOOD, ESQ.
Nevada Bar No. 9466
801 South Fourth Street
Las Vegas, Nevada 89101
*Attorneys for Plaintiff*

# **CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I hereby certify that I am an employee of the RICHARD HARRIS LAW FIRM and that on the 18th day of May, 2018, I caused the foregoing, **PLAINTIFF'S OPPOSITION TO DEFENDANT SAFECO INSURANCE COMPANY OF ILLINOIS'[S] MOTION FOR PARTIAL SUMMARY JUDGMENT**, to be served by the CM/ECF electronic filing system for the United States District Court, District of Nevada, to the following:

> Riley A. Clayton, Esq.
> **HALL JAFFE & CLAYTON, LLP**
> 7425 Peak Drive
> Las Vegas, Nevada 89128
> *Attorneys for Defendant*
> *Denny's Inc. d/b/a Denny's Restaurant*

*/s/ Nicole Gilenson*
_____
An employee of RICHARD HARRIS LAW FIRM